# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Cathy THOMAS-TAYLOR,<br>    Plaintiff,<br>v.<br>CITY OF PITTSBURGH and<br>FRATERNAL ORDER OF POLICE,<br>FORT PITT LODGE No. 1,<br>    Defendants. | Civil Action No. 13-164 |

## MEMORANDUM OPINION

## I. Introduction

Pending before the court are motions for summary judgment filed by defendants City of Pittsburgh (the "City") and Fraternal Order of Police Fort Pitt Lodge No. 1 (the "FOP"). (ECF Nos. 48, 45.) The City filed a brief (ECF No. 49) and a concise statement of material facts (ECF No. 50) in support of its motion. The FOP also filed a brief and a concise statement of material facts in support of its motion. (ECF Nos. 46, 47.) Plaintiff Cathy Thomas-Taylor ("plaintiff") filed responses in opposition to the motions (ECF Nos. 54, 55) and briefs in opposition (ECF Nos. 57, 60.) The City and the FOP filed respective replies to those briefs. (ECF Nos. 65, 63.) The parties filed a joint statement of undisputed facts. (ECF No. 77.)

Plaintiff alleges the FOP retaliated against her when it declined to file grievances on her behalf, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e–2000e-17. Plaintiff asserts four counts against the City. Plaintiff brings a breach of contract claim (count one). Plaintiff alleges the City interfered with her pension eligibility in retaliation for discrimination

charges she previously filed against them, in violation of Title VII (count two) and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001-1461 (count three). Plaintiff also brings a claim for unlawful interference under ERISA (count four).

## II. Factual Background

Plaintiff, an African-American female, began her employment with the City on September 25, 1989, as a police officer. (Joint Statement of Undisputed Facts ¶ 1, ECF No. 77.) Through her employment, plaintiff was a member of the FOP. The FOP is the collective bargaining representative for union members. (*Id.* ¶¶ 2, 3.)

### *A. City*

In May 2001 and June 2002, plaintiff suffered work-related back injuries resulting in ongoing medical treatment and periods of leave from work. (*Id.* ¶ 4.) As a result of these injuries, plaintiff was placed on benefits pursuant to the Heart and Lung Act ("HLA"), 53 PA. STAT. § 637. (*Id* ¶ 5.) HLA benefits are available to state and municipal employees who suffer temporary work-related injuries during the performance of their job duties, and extend full compensation and employee benefits for the duration of the injury. 53 PA. STAT. § 637. While plaintiff was receiving HLA benefits, the City continued to contribute to her pension plan from HLA benefits as required by the working agreement between the FOP and the City. (ECF No. 77, ¶ 7.) The working agreement outlines the compensation, benefits, and obligations of the City to FOP union members. (ECF No. 46-4.)

On January 14, 2008, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against the City, claiming she was denied seniority status in selecting shifts and pass days for the coming

year, known as "job-pick" status, based upon her disability and race. (ECF No. 32, ¶ 34.)

In June 2009, the City filed a petition to discontinue plaintiff's HLA benefits on account of her impairment no longer being temporary in nature. (ECF No. 58-6.) An arbitrator issued an order on June 6, 2009, granting the petition to terminate HLA benefits and indicating plaintiff would be converted to worker's compensation benefits, pursuant to the Worker's Compensation Act, 77 PA. STAT. § 411 . (ECF No. 58-7.) Plaintiff was informed of this decision via a letter from the Policeman's Relief and Pension Fund of the City of Pittsburgh ("Pension Fund") dated August 17, 2010. (ECF No. 58-12.) This letter advised the plaintiff that her automatic pension contributions ceased as of June 7, 2009, and that she should contact the Pension Fund to discuss her retirement options as a result of the conversion. (*Id.*)

In December 2009, plaintiff filed suit against the City in the District Court for the Western District of Pennsylvania at Civil Action No. 09-1648 for discrimination based upon disability and race, relating to her loss of "job-pick" status. In December 2010, plaintiff and the City settled the dispute by executing a settlement agreement and general release. (ECF No. 58-14.) Under the settlement agreement, inter alia, plaintiff received a $95,000 payment, and she was required to resign on or before February 28, 2011. (*Id.*) The settlement agreement included an extensive general release of claims against the City. (*Id.*) The scope of this release is now disputed by plaintiff and the City as it pertains to plaintiff's ability to bring claims against the City.

On January 11, 2011, prior to her designated resignation, plaintiff applied for disability pension benefits. (ECF No. 58-17.) She was examined by a physician, who was unable to diagnose her pain and could not state that she was physically disabled. (*Id.*) Shortly after her application, plaintiff was informed by

the Pension Fund that her claim was denied. (ECF No. 77, ¶ 29.) On June 9, 2011, plaintiff filed a second charge of discrimination against the City with the EEOC, alleging the denial of her request for disability pension was discriminatory and retaliation for her previous charge of discrimination. (ECF No. 58-16.)

On January 9, 2012, plaintiff was informed by the Pension Fund that she was ineligible to receive her regular pension at age 50, because she lacked the requisite twenty years, or 240 months, of pension contributions. (ECF No. 77, ¶ 33.) The Pension Fund calculated plaintiff's contribution time at nineteen years and five months. (*Id*. ¶ 34.) In a letter to plaintiff's attorney, the Pension Fund stated its records showed "no [pension contributions] for March 1998, only six months in 2009 and one for 2010." (ECF No. 46-10.) The letter raised the possibility of plaintiff being able to "purchase this time back" to qualify for pension benefits. (*Id*.)

On March 26, 2011, plaintiff filed suit against the FOP at Civil Action No. 11-399. On February 22, 2012, plaintiff amended the complaint to assert a breach of contract claim against the City, citing failure to make pension contributions on her behalf as required by the working agreement. On January 31, 2013, plaintiff filed a new complaint against the City claiming breach of contract, Title VII Retaliation, ERISA retaliation, and ERISA interference relating to pension eligibility. These claims were filed in this action.

### B. FOP

Throughout the discourse between plaintiff and the City, plaintiff turned to the FOP for representation in matters pertaining to her "job pick" status, pension, and longevity pay. Plaintiff alleges the FOP acted in bad faith and retaliated against her by refusing to file her grievances against the City.

On January 14, 2008, plaintiff filed an EEOC charge of discrimination against the FOP because it refused to file a grievance she wished to bring against

4

the City concerning her "job pick" privileges. (ECF No. 77, ¶ 8.) At the FOP's next meeting, in February 2008, membership passed a motion that if a member brings a complaint or suit against the FOP and the FOP "is found of no wrongdoing, the member then must reimburse [the FOP] for the cost of the defense." (ECF No. 62-7.)

In September 2009, unrelated to her first charge of discrimination, plaintiff attempted to file another grievance against the City, this time relating to her longevity pay, which is a benefit paid to employees based upon length of service. (ECF No. 47, ¶ 7; ECF No. 61, ¶ 7.) The FOP refused to file the grievance. (*Id.*) The FOP asserts the grievance is meritless because plaintiff's worker's compensation status precluded her from receiving benefits and alternatively, the claim was premature, as benefits would not come due until the following February. (ECF No. 46, at 7.)

On January 25, 2010, plaintiff filed a second charge of discrimination with the EEOC against the FOP, claiming its refusal to file her longevity pay grievance was retaliation for her prior charge of discrimination against the FOP. (ECF No. 47, ¶ 8; ECF No. 61, ¶ 8.) On March 26, 2011, plaintiff filed suit against the FOP at Civil Action No. 11-399, claiming she was retaliated against for her prior discrimination charges in violation of Title VII. That action was consolidated with this action.

### III. Standard of Review for Summary Judgment

Summary judgment is appropriate if the record shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). In evaluating the motion, all factual inferences must be drawn in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The court asks whether there is a need for trial—"whether,

in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Liberty Lobby*, 477 U.S. at 250. In ruling on a motion for summary judgment, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 248-49; *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000) (citing decisions).

The burden of showing that no genuine issue of material fact exists rests initially on the party moving for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996). The moving party may satisfy its burden either by producing evidence showing the absence of a genuine issue of material fact or by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. A defendant who moves for summary judgment is not required to refute every essential element of the plaintiff's claim; rather, the defendant must only point out the absence or insufficiency of plaintiff's evidence offered in support of one or more of those elements. *Id.* at 322-23. Once the movant meets that burden, the burden shifts to the nonmoving party to present sufficient evidence demonstrating that there is indeed a genuine and material factual dispute for a jury to decide. *Id.* at 323-25; *Liberty Lobby*, 477 U.S. at 247-48.

The nonmoving party must do "more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear

the burden of proof at trial." *Celotex,* 477 U.S. at 322. If the nonmovant produces evidence that is "merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50 (citations omitted). The nonmovant must "'identify those facts of record which would contradict the facts identified by the movant.'" *Port Auth. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002) (quoting *Childers v. Joseph*, 842 F.2d 689, 694-95 (3d Cir. 1988)).

The mere existence of a factual dispute will not necessarily defeat a motion for summary judgment. Only a dispute over a material fact—that is, a fact that would affect the outcome of the suit under governing substantive law—will preclude the entry of summary judgment. *Liberty Lobby*, 477 U.S. at 248. Even then, the dispute over the material fact must be genuine, such that a reasonable jury could resolve it in the nonmoving party's favor. *Id.* at 248-49.

## IV. Discussion

### A. Claims Against the City

Plaintiff asserts claims of breach of contract, Title VII retaliation, and ERISA retaliation and interference. Plaintiff contends that the City wrongfully converted her from HLA to worker's compensation benefits and ceased pension fund contributions on her behalf. Plaintiff alleges these actions violated the working agreement and were taken to retaliate against her and interfere with her pension eligibility. (ECF No. 57, at 2, 11, 16, 17.)[1]

---

1   In her complaint, plaintiff vaguely alleges the City engaged in "behavior to ensure her disability pension would be denied and engaged in behavior that would insure her years of service would be decreased by either altering or failing to satisfy its obligation." (ECF No. 32, ¶¶ 69-70.) The only directly identified actions taken by the City are the conversion from HLA to worker's compensation and cessation of pension contributions.

7

All these claims, however, are precluded by the settlement agreement executed between plaintiff and the City. The settlement agreement reads in relevant part:

> 4. **General Release of Claims.** Ms. Thomas Taylor knowingly an voluntarily releases and forever discharges the City and its current and former employees, attorneys, officers, directors and agents thereof and the current and former trustees of administrators of any pension or other benefit plan applicable to the employees or former employees of City . . . of and from any and all claims, demands, liabilities obligations, promises, controversies, damages, rights, actions and causes of action, known and unknown, whether in law or equity, which Ms. Thomas Taylor has or may have asserted against the City as of the date of execution of this Agreement, at common law, under contract, or under any statute or law, federal state or, including but not limited to any alleged violation of: Title VII of the Civil Rights Act of 1964, as amended; the Age Discrimination in Employment Act of 1967, as amended; the Older Workers Benefit [sic] Protect Act; the Pennsylvania Human Relations Act; and any other federal, state or local law or any allegation for costs, fees, or other expense including attorney's fees (all of the above collectively referred to as "Claims"). This includes any claim to longevity pay for 2011.
>
> This release is intended to be a general release and excludes only those claims under any statute or common law that Ms. Thomas Taylor is legally barred from releasing. Ms. Thomas Taylor understands that the release does not include any claim that cannot be released or waived as a matter of law; any claim for or right to vested benefits under City's plans; any right to enforce any term of this Agreement; any claims based on acts of events occurring after Ms. Thomas Taylor signs this agreement, or any prohibition on the filing of a charge or complaint with any federal, state or local governmental agency, including but not limited to the EEOC.
>
> . . . .

> 6. **Affirmations.** . . . .
>
> . . . Ms. Thomas Taylor covenants and agrees not to file a lawsuit against City in any court of the United States or any state thereof asserting any claim or cause of action released in paragraph 4.

(ECF No. 58-14, ¶¶ 4, 6.)

Although the settlement agreement resolved a separate discrimination claim, all the claims brought in the present case could have been brought at the time the agreement was signed in December 2010. The plaintiff articulates two actions taken by the City as the basis for her claims: (1) the City improperly converted her from HLA to Worker's Compensation; and (2) the City improperly ceased contributions to her pension. Both of these actions preceded the settlement agreement. Plaintiff was officially converted from HLA to Worker's Compensation on June 2, 2009. (ECF No. 77, ¶ 9.) The City ceased pension contributions at that time. (*Id.* ¶ 10.) By a letter dated August 17, 2010, plaintiff was notified of the conversion and was informed the City had ceased contributions to her pension. (ECF No. 58-12.) The benefit conversion and cessation of pension contributions occurred more than a year prior to the settlement agreement. She was notified of those changes several months before entering into the agreement. Plaintiff may not have been fully aware of the effects these actions would have on her pension eligibility, but she was aware of their occurrence. The agreement bars all causes of action both "known and unknown" at the time of signing. (ECF No. 58-14, ¶ 4.)

Plaintiff disputes the waiver of these claims. (ECF No. 57, at 20.) "Plaintiff did not, nor did she intend to, waive any claims set forth in her Complaint." (*Id.*) Whether or not it was her intention to waive her claims, she (and her attorney)

9

signed the settlement agreement.[2] (ECF No. 58-14, at 6.) Plaintiff additionally argues that the waiver of her "vested benefits" is prohibited by the compromise and release she signed prior to the settlement agreement and because "[p]laintiff *could not* waive her vested rights or entitlement to pension benefits because 'entitlement' claims cannot be waived by a general release."[3] (*Id.* at 20-21.) plaintiff's "vested rights or entitlement to pension benefits" are not at issue in this lawsuit. Another entity, the Pension Fund, determined her pension eligibility. (ECF No. 77, ¶ 39.) Plaintiff sued the Pension Fund, but later voluntarily dismissed her claims against it. (ECF No. 78.)

None of plaintiff's claims against the City are legally barred from being released. Title VII claims may be waived as part of a voluntary settlement. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 52 (1974).[4] The settlement agreement clearly contemplated claims related to plaintiff's pension, as it specifically releases "the current and former trustees or administrators of any pension or other benefit plan applicable to the employees or former employees of City." (ECF No. 58-14, ¶ 4.) The settlement agreement released any claims "under contract." (*Id.*)

---

2  The settlement agreement contains an integration clause, which provides that "[n]o prior or contemporaneous oral or written agreements or representations may be offered to alter the terms of this Agreement[,] which represents the entire agreement of the parties with respect to the subject matter hereof." (ECF No. 58-14, ¶ 14.) The parties also agreed that any modification of the settlement agreement must be in a signed writing. (*Id.* ¶ 13.)

3  Plaintiff provided no authority for this statement.

4  While "there can be no prospective waiver of an employee's rights under Title VII," *Alexander*, 415 U.S. at 51, the settlement agreement only waived claims plaintiff asserted or may have asserted at the time of execution of the agreement. (ECF No. 58-14, ¶ 4.)

The Third Circuit Court of Appeals has repeatedly held that "an employee's settlement and release of claims, if knowing and voluntary, waives those claims and bars a subsequent suit." *Henson-Miksic v. Potter*, 250 F. App'x 509, 511 (3d Cir. 2007); *see Coventry v. U.S. Steel Corp.*, 856 F.2d 514, 522 (3d Cir. 1988). Plaintiff did not allege, and provided no evidence, that the settlement agreement was fraudulent or somehow not knowing and voluntary. To the contrary, the evidence indicates that plaintiff was represented by counsel and the releases in the settlement agreement were part of a bargained-for exchange. Plaintiff received $95,000 in return for releasing all claims against the City. Although plaintiff is upset she is not receiving pension benefits, she cannot seek redress from the City for actions it took prior to the execution of the settlement agreement; those claims are waived. Only legal issues are disputed. There are no genuine issues of material fact in dispute. The City's motion for summary judgment will be granted.

### B. Title VII Retaliation Claim Against the FOP

Plaintiff asserts a claim of retaliation under Title VII against the FOP. In January 2008, plaintiff filed a charge of discrimination against the FOP, claiming the FOP failed to fully represent her in matters pertaining to job selection based on her race and sex, in violation of Title VII. (ECF No. 77, ¶ 8.) Plaintiff argues the FOP retaliated against her for filing this charge of discrimination in three ways: (1) the FOP declined to file a grievance against the City based upon plaintiff's claim to longevity pay; (2) the FOP adopted a policy holding members responsible for legal fees and sent plaintiff a letter asserting that she owed the FOP legal fees after the charge of discrimination was resolved; and (3) the FOP

11

ceased communicating with plaintiff for a period of time in 2009 and 2010. (ECF No. 60, at 3, 6.)[5]

Title VII prohibits a labor organization from discriminating against a member because the member made a charge of employment discrimination. 42 U.S.C. § 2000e-3(a). A Title VII retaliation claim is analyzed under the burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). *Moore v. City of Phila.*, 461 F.3d 331, 342 (3d Cir. 2006). First, plaintiff must establish a prima facie case of retaliation. "To establish a *prima facie* case of retaliation under Title VII, a plaintiff must tender evidence that '(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action.'" *Id.* at 340-41 (quoting *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)). The causation element requires a plaintiff to "establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013).

---

5    Plaintiff argues that the FOP breached its "duty of fair representation" as set forth in *Vaca v. Sipes*, 386 U.S. 171, 177 (1967). (ECF No. 60, at 8.) In *Vaca*, the Supreme Court addressed a union's statutory duty under § 8 of the National Labor Relations Act, 29 U.S.C. § 158. *Vaca*, 386 U.S. at 176-77. A union violates this duty if its conduct toward a member is "arbitrary, discriminatory, or in bad faith." *Id.* at 190. This duty applies to the processing of grievances. *Id.* at 194. The only outstanding claim against the FOP in this case, however, is retaliation under Title VII. *Vaca* is therefore inapposite. At issue is whether the FOP retaliated against plaintiff for her protected Title VII activity, not whether it violated any duty under the National Labor Relations Act.

The burden at the prima facie stage is "not particularly onerous." *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 369 (3d Cir. 2008). If a prima facie case is established, the burden shifts to the defendant "to advance a legitimate, non-retaliatory reason for its conduct." *Moore*, 461 F.3d at 342 (internal quotation marks omitted). If it does so, the plaintiff must "convince the factfinder both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." *Id.* (internal quotation marks omitted).

The FOP does not dispute that plaintiff engaged in a protected activity. In 2007, plaintiff filed a charge of discrimination against the FOP, claiming the FOP failed to represent her fully in matters pertaining to job selection based on her race and sex, in violation of Title VII. (*See* ECF No. 46-3). Plaintiff filed a second charge of discrimination with the EEOC on January 25, 2010. (ECF No. 47, ¶ 8; ECF No. 61, ¶ 8.) Filing a charge of discrimination with the EEOC is a protected activity. Protection from retaliation "is not lost merely because an employee is mistaken on the merits of his or her claim." *Slagle v. Cnty. of Clarion*, 435 F.3d 262, 268 (3d Cir. 2006). All that is required is that the plaintiff previously engaged in a protected activity in response to an act of perceived discrimination based upon race, sex, or disability. *Id.* at 268. The first element of the prima facie case is met.

The next element of the prima facie case is whether plaintiff suffered an adverse employment action under Title VII. The antiretaliation provision of Title VII is not limited to discriminatory actions that affect the terms and conditions of employment. *Moore*, 461 F.3d at 341. Actions must only be what a reasonable employee would have found "'materially adverse'" and what "'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548

U.S. 53, 68 (2006)). The purpose of the antiretaliation provision is to maintain "unfettered access" to the "remedial mechanisms" of Title VII. *Burlington N.*, 548 U.S. at 64 (internal quotation marks omitted).

For the purposes of this opinion, the court will assume that the actions plaintiff complains of constitute adverse employment actions under Title VII. Refusing to file grievances, charging members legal fees for unsuccessful charges of discrimination and lawsuits, and ceasing communications might dissuade a reasonable union member from making a charge of discrimination. Considering the broad purpose of the antiretaliation provision and the light burden at the prima facie stage, the adverse employment action element is satisfied.

Finally, plaintiff must demonstrate a causal link between the protected activity and adverse employment action. Plaintiff must provide enough evidence to allow a reasonable jury to infer that there was retaliatory intent and that the intent to retaliate was a but-for cause of the adverse employment action. In other words, plaintiff must demonstrate that the employer would not have taken the adverse action absent the desire to retaliate. *Nassar*, 133 S. Ct. at 2533. Proof of causation may be established in a number of ways. First, temporal proximity can serve as circumstantial evidence "'sufficient to raise the inference that [plaintiff's] protected activity was the likely reason for the adverse action.'" *Kachmar v. SunGard Data Sys., Inc.*, 109 F.3d 173, 177 (3d Cir. 1997) (quoting *Zanders v. Nat'l R.R. Passenger Corp.,* 898 F.2d 1127, 1135 (6th Cir. 1990)). "It is important to emphasize that it is causation, not temporal proximity itself, that is an element of the plaintiff's prima facie case, and temporal proximity merely provides an evidentiary basis from which an inference can be drawn." *Kachmar*, 109 F.3d at 178. The "mere fact that [an] adverse employment action occurs after a complaint will ordinarily be insufficient to satisfy the plaintiff's burden of demonstrating a causal link between the two events." *Robinson v. City of Pittsburgh,* 120 F.3d

1286, 1302 (3d Cir. 1997), *abrogated on other grounds by Burlington N.*, 548 U.S. 53. The timing must be "unusually suggestive" to raise an inference of causation. *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997) (internal quotation marks omitted). Generally, a lapse of several months between the plaintiff's complaint and termination is not unusually suggestive of a retaliatory motive. *See Groeber v. Friedman & Schuman, P.C.*, 555 F. App'x 133, 136 (3d Cir. 2014) (three-month gap); *Bailey v. Commerce Nat'l. Ins. Servs., Inc.*, 267 F. App'x 167, 170 (3d Cir. 2008) (four-month gap); *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232-33 (3d Cir. 2007) (three-month gap); *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004) (two-month gap). In contrast, a lapse of a few days suggests a retaliatory motive sufficient to establish causation for the prima facie case. *See Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 369 (3d Cir. 2008) (gap of three working days); *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) (two-day gap).

Absent temporal proximity, "circumstantial evidence of a 'pattern of antagonism' following the protected conduct can also give rise to the inference." *Kachmar*, 109 F.3d at 177 (quoting *Zanders*, 898 F.2d at 1135). Temporal proximity and a pattern of antagonism are not the only means to prove causation; the proffered evidence as a whole may be sufficient to raise an inference of intent. *Id.*

The evidence of a causal connection between plaintiff's protected activity and each of the adverse employment actions is addressed below.

1. *Failure to File Grievance*

In September 2009, plaintiff sought to file a grievance against the City because she believed she was owed longevity pay. (ECF No. 47, ¶ 7; ECF No. 61, ¶ 7.) The FOP declined to file the grievance. Plaintiff asserts she was never informed the grievance was denied. (ECF No. 60, at 6.)

The FOP argues that plaintiff cannot show that the desire to retaliate against plaintiff was the cause of its decision to refuse to file the grievance. (ECF No. 46, at 10.) Plaintiff contends that she met her burden with respect to causation and established a prima facie case of retaliation based upon the timing and sequence of events surrounding the denial. (ECF No. 60, at 5-6.) The FOP asserts that even if plaintiff established a prima facie case of retaliation, the FOP met its burden of demonstrating a legitimate, nondiscriminatory reason for declining to file the plaintiff's grievance, namely the grievance was not warranted. (ECF No. 46, at 7.)

Plaintiff falls short of presenting evidence sufficient to raise an inference of causation. The adverse employment action is too far removed from the plaintiff's protected action. Plaintiff filed her first charge of discrimination with the EEOC in January 2008. Plaintiff sought to file a grievance for longevity pay in September 2009. The adverse employment action, the FOP's refusal to file the grievance, came twenty months after the charge. This temporal proximity is not unusually suggestive of a discriminatory motive.

### 2. *The FOP's Legal Fees*

Plaintiff asserts that two events involving the FOP's legal fees were in retaliation for her charges of discrimination. (ECF No. 60, at 5-6.) At the FOP's meeting on February 21, 2008, membership adopted a motion that if a member brings a complaint or suit against the FOP and the FOP "is found of no wrongdoing, the member then must reimburse [the FOP] for the cost of the defense." (ECF No. 62-7.) Plaintiff contends that this action is "highly suggestive of retaliatory intent" because it came less than a month after she filed her first charge of discrimination against the FOP on January 14, 2008. (ECF No. 60, at 5.)

Courts have differed about whether a one-month gap is "unusually suggestive" of animus. *See Yu v. U.S. Dep't of Veterans Affairs*, 528 F. App'x 181,

185 (3d Cir. 2013) (finding, in the context of a *Bivens* action, that a nearly one-month delay "is too long to be 'unusually suggestive'"); *Schummer v. Black Bear Distribution, LLC*, 965 F. Supp. 2d 493, 499 (D.N.J. 2013) (one month not unusually suggestive). *But see Alers v. City of Phila.*, 919 F. Supp. 2d 528, 552 (E.D. Pa. 2013) (finding that a gap of "barely one month" between plaintiff's "activity and the alleged retaliation appears unusually suggestive"). The majority of the case law supports a conclusion that the gap is not unusually suggestive. *See Yu*, 528 F. App'x at 185 (finding that "unusually suggestive" means "within a few days but no longer than a month").

"Where timing is close, but not unusually suggestive, courts look for other circumstantial evidence to support a finding of causation." *Yeakel v. Cleveland Steel Container Corp.*, Civil No. 09-568, 2011 WL 536536, at *4 (E.D. Pa. Feb. 15, 2011). The record is devoid of other circumstantial evidence supporting causation with respect to this action by the FOP. The only evidence in the record related to the membership vote is a letter from the FOP to plaintiff in February 2010, two years later. The letter indicates that the policy was adopted for all members. (ECF No. 62-7.) Outside of timing, plaintiff offered no evidence from which a finder of fact could infer that this policy was directed toward plaintiff or was motivated by retaliatory animus.[6] Plaintiff may not oppose summary judgment by relying on the bare allegations of the complaint. *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001).

Plaintiff also alleges that a letter from the FOP, which informed her that she was responsible for legal fees in connection with the FOP's defense of her 2008

---

6  Based upon the record, it appears that neither plaintiff nor any FOP leaders or members were deposed in this case.

charge of discrimination and that her membership dues were in arrears, demonstrates retaliatory animus. (ECF No. 60, at 6.) The letter is dated February 18, 2010, slightly less than a month after she filed her second charge of discrimination against the FOP on January 25, 2010. Plaintiff notes that she received the "legal bill" five months after the EEOC dismissed the charge, but only one month after she filed her second charge of discrimination. (*Id.*) As set forth above, slightly less than one month between the protected activity and adverse action is, in general, not unusually suggestive. Moreover, the letter appears to be in response to plaintiff putting herself forward as a candidate for delegate in the FOP's 2010 election. (ECF No. 62-7.) It informs her of the need to pay outstanding charges in order to be considered "in good standing" and eligible to stand for election. (*Id.*) Again, aside from pointing to the timing, plaintiff provided no evidence of retaliatory animus.

### 3. *Lack of Communication*

Plaintiff asserts the FOP "ceased communications" with her from June 2009 to February 2010. (ECF No. 60, at 6.) As evidence of this, she provides a letter she sent to the FOP's attorney on October 16, 2009, and a letter she sent to the FOP's grievance chairman on October 28, 2009. (ECF No. 62-6.) October 2009 is more than a year after plaintiff filed the charge of discrimination. Even assuming that the FOP stopped communicating with plaintiff in June 2009, for which there is no evidence of record, there is no temporal proximity to the protected activity. There is no evidence suggesting the FOP had a policy to ignore plaintiff or did not respond in order to retaliate against her. No reasonable jury could infer retaliatory animus from two letters without any supporting affidavits or testimony.

*4. Other Evidence of Causation*

Plaintiff may also establish causation by showing a "pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). The evidence before the court does not establish a "pattern of antagonism." Plaintiff argues that the "FOP took ongoing, unjustified actions" against her. (ECF No. 60, at 7.) The actions she points to, however, were widely spaced over a number of years. The record evidence of letters from the FOP to plaintiff shows that these communications were respectful. There is no indication of antagonism, let alone a pattern of antagonism.

The court must also consider the record as a whole. In *Kachmar*, the Court of Appeals for the Third Circuit found a district court erred by focusing only on whether there was a temporal connection between the protected activity and adverse employment action or a pattern of antagonism. *Kachmar*, 109 F.3d at 177. A district could must consider whether the record, "looked at as a whole," raises an inference of causation. *Id*. Unlike in *Kachmar*, which was before the court at the motion to dismiss stage, in this case plaintiff has had the benefit of discovery. Plaintiff cannot rely on her allegations. After reviewing the record as a whole, the court is unable to find any evidence sufficient to support an inference of causation by the finder of fact.

*5. Conclusion*

Plaintiff falls short of presenting evidence sufficient to raise an inference of but-for causation necessary to establish a prima facie case. None of the alleged retaliatory acts was sufficiently close in time to the protected activity to permit an inference of retaliatory animus. Plaintiff did not present evidence showing a pattern of antagonism. Thus, plaintiff failed to adduce sufficient evidence of but-for causation for a reasonable jury to render a verdict in her favor. As there are no

genuine issues of material fact in dispute, the FOP is entitled to summary judgment.[7]

## VI. Conclusion

The City's motion for summary judgment (ECF No. 48) will be granted because plaintiff waived her claims at issue by entering into the settlement agreement. The FOP's motion for summary judgment (ECF No. 45) will be granted because plaintiff failed to adduce sufficient evidence to support a prima facie case of retaliation under Title VII. An appropriate order will be entered.

Dated: August 18, 2014                /s/ Joy Flowers Conti
                                      Joy Flowers Conti
                                      Chief United States District Judge

---

[7] In an attempt to show a disputed material fact, plaintiff points to what she claims is contradictory evidence about plaintiff's years of service. (ECF No. 60, at 9.) This issue relates to the FOP's legitimate, nondiscriminatory reason for declining to file her grievance; that is, the grievance was meritless because she was not entitled to longevity pay. (ECF No. 46, at 7-8.) Because plaintiff failed to adduce sufficient evidence of causation to support a prima facie case, the court does not reach this issue and any dispute about plaintiff's years of service is not material.